UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GISELE MENDOZA, MARY GAMBOA,
ZULAY SCAMARONEZ, LORENA ALMEIDA,        07CV2579(HB)
NANCY MORA, GREIS VIDAL, LOURDES         **OPINION &**
CAISAGUANO, SANDRA GONZALEZ,             **ORDER**
JEANNETH GARCIA, NATALIA BARONA,
and MARTHA FORERO on behalf of themselves
and all others similarly situated,

                              **Plaintiffs,**

   -against-

CASA DE CAMBIO DELGADO, INC., DELGADO
TRAVEL AGENCY, INC., DELGADO & DELGADO
TRAVEL CORP., DENISE DELGADO, HECTOR
DELGADO, JEANETTE DELGADO-SAVINO, and
LINDA DELGADO,

                              **Defendants.**
------------------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:[1]**

Plaintiffs have sued their former employers Delgado Travel Agency, Delgado Travel Corp., and Casa de Cambio Delgado, Inc. ("Defendants"), a collection of travel agency and money wire businesses, for failure to pay overtime and spread of hours wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law § 650 *et seq.* ("NYLL"). In an April 7, 2008 opinion, I denied without prejudice Plaintiffs' request for conditional certification as a collective action under § 216 of the FLSA and class action under Fed. R. Civ. P. 23(a) and (b)(3) for their NYLL claims. Mendoza v. Casa de Cambio Delgado Inc., No. 07 Civ. 2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008). After additional discovery, Plaintiffs renewed their motion for collective action and class action certification. Defendants oppose the motion on the ground that Plaintiffs have again 1) failed to show that the named Plaintiffs are similarly situated with the putative class members; and 2) failed to show that the proposed class meets any of the class action requirements of FRCP 23. (Defendants' Mem. of

---

[1] I wish to thank Ms. Amy Wolper of Cardozo Law School, my Summer 2008 intern, for her excellent work in researching and drafting this opinion.

1

Law in Opp. to Plaintiffs' Renewed Motion ("Sec. Opp. Mem.").)[2] For the reasons set forth below below, Plaintiffs' motion is granted.

## I. FACTS

Defendant corporations maintain travel agencies and currency exchange businesses in New York and other states. (Sec. Am. Compl. ¶¶ 18-24, 27-30 ("Compl.").) Most of the named Plaintiffs worked for Defendants' from Monday through Friday from 9:00 am to 8:30 pm; 9:00 am through 6:00 pm on Saturdays; and later during peak travel periods, approximately 20 days per year. (Compl. ¶¶ 31-41.) Plaintiffs allege that Defendants caused Plaintiffs to be paid a weekly salary, rather than an hourly wage, and that the weekly salary did not reflect the actual hours they worked each week. (Compl. ¶ 42, 46.) Accordingly, Plaintiffs contend that they were not paid for one and one-half times their regular hourly rate for work in excess of forty hours per workweek. Id. In addition, Plaintiffs allege that Delgado violated the New York Labor Law by failing to pay them an additional hour at the minimum hourly wage for each day on which the number of hours between their arrival and departure times ("spread of hours") exceeded ten. (Compl. ¶ 2.)

## II. LEGAL STANDARDS

### A. Collective Action Certification – FLSA § 216(b)

"The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated with *respect to their allegations that the law has been violated.*" Hallissey v. Am. Online, Inc., No. 99 Civ. 3785, 2008 U.S. DIST LEXIS 18387, at *5 (S.D.N.Y. Feb. 19, 2008) (emphasis in original) (citation omitted). Plaintiffs are only required to make a "modest factual showing" that they and potential collective action members were victims of a common policy or plan that violated the law.[3] Lynch v. United States Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

It is not necessary for a court to evaluate the merits of the plaintiffs' claims in order to determine that a group of similarly situated persons exists. Cuzco v. Orion Builders, Inc., 477 F.

---

[2] "Opp. Mem." will refer to Defendants' original Memorandum of Law in Opposition to Plaintiffs' Motion to Proceed as a Collective Action under the FLSA and For Class Certification.

[3] Although several depositions have been taken and numerous documents produced, the certification analysis remains in the first stage of the two-step certification process because the initial application was denied. See Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007). Thus, "it is not necessary to engage in the second tier of analysis with the more stringent standard here as such scrutiny is applied only to '*post discovery*' determinations, usually precipitated by a defendant's motion for decertification of the class and not by a § 216(b) motion." Hallissey, 2008 U.S. DIST LEXIS 18387, at *4 (citation omitted).

Supp. 2d 628, 633 (S.D.N.Y. 2003). Further, while dates of employment and hours worked may be unique to each employee, these differences do not necessarily create dissimilarity under the FLSA. See Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007). Nor does the fact that employees worked a variety of different jobs in a number of different departments at different locations preclude class treatment. Hallissey, 2008 U.S. DIST LEXIS 18387, at *5-6 (citation omitted).

## B. Class Certification – FRCP §§ 23(a) and (b)(3)

District courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial. In re Initial Pub. Offering Sec. Litig., 483 F.3d 70, 73 (2d Cir. 2007). Where, as here, "a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." ABC Carpet & Home, 236 F.R.D. at 202-03. However, a court has the power to alter or modify the class description if subsequent events suggest that it is appropriate to do so. Catanzano by Catanzano v. Dowling, 847 F. Supp. 1070, 1077 (W.D.N.Y. 1994). Plaintiffs must prove that the putative class has satisfied all four prerequisites of Rule 23(a) and at least one category of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). The district court judge can consider affidavits, documents, and testimony to determine whether each Rule 23 requirement has been met. See In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).

## III. DISCUSSION

## A. Collective Action FLSA § 216(b)

I previously found that Plaintiffs failed to meet the similarly situated requirement of § 216(b) because they lacked the requisite factual nexus with other employees of the Delgado network. Mendoza v. Casa de Cambio Delgado Inc., No. 07 Civ. 2579, 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (citing lack of factual nexus as the "principal defect" with Plaintiffs' original certification request). With their renewed motion for certification, however, Plaintiffs have passed the very low threshold and met the similarly situated requirement. Put another way, it has demonstrated a factual nexus with other members of the putative class. Damassia v. Duane Reade, Inc., 04 Civ 8819, 2006 U.S. Dist. LEXIS 73090, at *9-10 (S.D.N.Y. Oct. 5, 2006).

Plaintiffs have shown that "to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." Iglesias-Mendoza

v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007). Specifically, Sandra Gonzales, a named plaintiff, testified that she spoke with about 25 other travel agents at company meetings who told her that they were not paid for all of the hours they worked. (See Affidavit of Peter G. Eikenberry ("Eikenberry Aff."), Ex. XX.) Natalia Borona, Jeanneth Garcia, and Gloria Hurtado, all named Plaintiffs, testified in their affidavits that they spoke with their co-workers at their respective offices, ranging from five to eighteen other employees, and that these co-workers informed them that they too were not paid for all the hours they worked. (See id., Exs. CC, FF, AAA.) Jeanneth Garcia also reported that she distributed paychecks to four other employees, and that the paychecks were always for the same amount of money regardless of how many hours the employees worked per week. (See id., Ex. FF.) Additionally, Mary Gamboa, a named Plaintiff, specifically identified five employees, not named plaintiffs, who told her that they were not paid for all the hours they worked. (See id., Ex. EE.) In addition to the affidavits, Plaintiffs have provided the deposition transcripts of nine other Delgado employees. (See id., Exs. OO – VV.) These depositions were taken in connection with a prior lawsuit in which the Delgado companies were also the defendants. In the depositions, the former employees testified that they were required to work beyond their scheduled hours, and many testified that they were not paid for the extra hours worked. (See id., Exs. OO – VV, RR at 41:15-18, SS at 42:16-43:17, TT.)

Their "off-the-clock" claims pass the similarly situated threshold because Plaintiffs have demonstrated that other individuals in the putative class worked the same relatively uniform off-the-clock hours. Cf. Diaz v. Electronic Boutique of America, Inc., No. 04 Civ. 0840E, 2005 WL 2654270, at *5 (W.D.N.Y. October 17, 2005) (denying certification where employees' off-the-clock claim did not involve regularly scheduled time that was worked by all members of the class). The Plaintiffs' affidavits reveal that Defendants had a policy of holding bi-monthly morning meetings that required employees to come into work earlier than their scheduled arrival time, and that it was the company policy not to compensate employees for this additional time. (See Eikenberry Aff., Exs. CC - II.) The record also indicates that the company had a policy of leaving the store doors open beyond the respective stores' scheduled closing times to enable more clients to enter, which would consistently cause the employees to stay late, but without compensation for this extra time worked. (See id., Ex. PP at 15:4-21.) Further, Monica Avila testified in a prior litigation that the employees frequently stayed beyond the scheduled departure time because they were instructed to wait together until everyone's work had been finished

4

before they left.  (Id., Ex. PP at 21:3-7.)  Nancy Mora and others also testified that the employees were required to stay late to wait for the armored truck to come and pick up the day's earnings and were not compensated for this additional off-the-clock time.  (Declaration of Domenique C. Moran ("Moran Decl."), Ex. H at 70:17-23).

In sum, the Plaintiffs satisfy the requisite factual nexus with evidence that describes the company's common practices and a group of workers, both travel agents and cashiers, who were similarly subjected to such common practices.  See Cuzco, 477 F. Supp. 2d at 634.  The fact that the Plaintiffs' affidavits demonstrate differences in their work schedules, total hours worked, and their arrival and departure times at different locations does not preclude a finding that they are similarly situated with respect to the common policies or plans.   Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007).

Defendants' unsupported contention that Plaintiffs were required to show that they and the proposed class will rely on common evidence to prove their claims has no bearing at this initial stage of certification.  (Sec. Opp. Mem. at 8); Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006) ("It is not the Court's role to resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations at the preliminary certification stage of an FLSA collective action.").  The possibility that Defendants' alleged liability will be impossible to prove is also inapposite at this stage.  (Sec. Opp. Mem. at 8); Barrus, 465 F. Supp. 2d at 230.  The focus is "not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated."  Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

Even if all the Plaintiffs turn out to be dissimilarly situated, notification is appropriate at this stage.  See Krueger v. N.Y. Tel. Co., Nos. 93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988, at *6-7 (S.D.N.Y. July 21, 1993).  I therefore conditionally certify the collective action.

**B. Federal Rule of Civil Procedure 23 Class Action**

To certify a class, the court must determine through "rigorous analysis" that the plaintiffs have met each of the requirements of Fed. R. Civ. P. 23, and in doing so, must make factual and legal inquiries as necessary.  See generally In re Initial Pub. Offering Sec. Litig., 471 F.3d 24 (2d Cir. 2006).  However, the inquiry should not convert the class certification proceedings "into a protracted mini-trial of the substantial portion of the underlying litigation." Id. at 41.

*Numerosity*

Plaintiffs are required to show the existence of a class so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible. Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). Further, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." Id. Plaintiffs must, however, "show some evidence of or reasonably estimate the number of class members." Id. (citation omitted).

Plaintiffs have included in their renewed motion for certification a list of travel agents and cashiers employed by Delgado Travel since 2001. (See Eikenberry Aff., Ex. MM.) Plaintiffs allege that this list verifies that Delgado employed about 440 cashiers and 260 travel agents from 2001 through the present. Id. In response, Defendants maintain that Plaintiffs have not presented any specific facts concerning the number of employees out of the list of approximately 700 who allegedly were not compensated for all hours worked. (Sec. Opp. Mem. at 12.)[4] In my prior decision I agreed with Defendants that Plaintiffs' bald assertion that the class would consist of 100 or possibly 300 or 400 members was insufficient.[5] See Mendoza v. Casa de Cambio Delgado Inc., 2008 WL 938584, at *3. However, in their renewed motion, Plaintiffs have satisfied the numerosity requirement.

In addition to the list of Delgado employees (Eikenberry Aff., Ex. MM), the amended affidavits assert that the named Plaintiffs have knowledge of the existence of about 62 individuals other than themselves who were not paid overtime wages by Defendants. (See id., Exs. CC, EE, FF, XX, AAA.); see also Newman v. RCN Telecom Servs., Inc., 238 F.R.D. 57, 72 (S.D.N.Y. 2006) (numbers in excess of forty class members generally satisfy the numerosity requirement). Further, given the fact that Plaintiffs' Rule 23 claims are tethered to their allegations of Defendants' unlawful policies and practices—namely, the policy of requiring *all* employees to work beyond their scheduled hours without compensation and the policy of paying *all* employees a set weekly salary that does not reflect the true hours worked—it is sufficient at

---

[4] "Pl. Mem." refers to the Plaintiffs' original Memorandum of Law in Support of Their Motion to Proceed as a Collective Action under the FLSA and For Class Certification. "Pl. Sec. Mem." refers to the Memorandum in Support of Plaintiffs' Renewed Motion for Collective Action and Class Certification. "Pl. Sec. Reply Mem." refers to Plaintiffs' Reply Memorandum in Support of Their Renewed Motion for Collective Action and Class Certification.

[5] The Plaintiffs asserted in their original memorandum in support of their motion for certification that approximately 100 employees are in the class. (Pl. Mem. 11.) At oral argument, Plaintiff's counsel noted possibly 300 to 400 affected employees without explaining how he derived that number. (Hrg. Tr. 18.)

this stage that Plaintiffs' have produced a reasonable estimate of people who were employed by Defendants and thus were subject to the same policies or practices. See Newman, 238 F.R.D. 57 at 72 ("it is permissible for the Court to rely on reasonable inferences drawn from available facts").

Plaintiffs have met the numerosity requirement based on their allegations of Defendants' common practices that affected all travel agents and cashiers employed by Delgado Travel during the relevant period.

**Commonality & Typicality**

"As a practical matter," typicality and commonality "tend to merge in the Second Circuit's class certification inquiry." Iglesias-Mendoza v. La Belle Farm Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 2007). The two elements are related because "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id.

Under the commonality requirement of Rule 23(a)(2), a class action is maintainable if there are common questions of law or fact. Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001). "This requirement, unlike the predominance requirement of Rule 23(b)(3), does not mandate that these issues over-shadow potential individual issues, but only that common questions do exist." Collins v. Olin Corp., 248 F.R.D. 95, 101 (D. Conn. 2008). Therefore, "[t]he commonality requirement [is] satisfied if the class shares even one common question of law or fact, and factual differences in the claims of the class do not preclude a finding of commonality." ABC Carpet & Home, 236 F.R.D. at 203 (citation omitted).

The typicality requirement of Rule 23(a)(3) mandates that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Further, typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability . . . ." Robidoux, 987 F.2d at 936-37.

Plaintiffs allege that, notwithstanding the individual damages, questions regarding the legality of Defendants' compensation and workplace policies are common to all members of the class. (Pl. Sec. Mem. at 19-20.) I agree. More specifically, common questions of law and fact that unify the class include, *inter alia*, (1) what proof of hours worked is sufficient where an employer fails in its duty to maintain time records, (2) what were/are the policies and practices of

7

Defendants regarding payment of wages for hours worked, (3) what were/are the common conditions of employment in the workplace, such as record keeping, closing times and scheduled break times. See Velez v. Majik Cleaning Serv., Inc., No. 03 Civ. 8698, 2005 WL 106895, at * 4 (S.D.N.Y. Jan. 19, 2005). If significant differences among employees emerge at a later date, the Court could create subclasses to divide workers into more common groups based on job function or office location. (Pl. Mem. at 14); Boucher v. Syracuse Univ., 164 F.3d 113, 118-19 (2d Cir. 1999).

I also agree that Plaintiffs' claims are typical of the putative class members' claims because all of the claims share the same central issues of law or fact. (Pl. Mem. at 15.) Every class member's allegations would arise from the same course of events—namely, working at Delgado offices that share the same policies and workplace requirements—and each class member would make similar legal arguments to prove Defendants' liability. Robidoux, 987 F.2d at 936-37.

Defendants have failed to adequately address the Plaintiffs' claims with respect to commonality and typicality. It is insufficient to argue, as the Defendants have, that litigating Plaintiffs' claims will require "an individualized analysis of the facts and circumstances surrounding each potential class member's employment with the Defendants." (Sec. Opp. Mem. at 14.) "[F]actual differences in the claims of the class do not preclude a finding of commonality." ABC Carpet & Home, 236 F.R.D. at 203. Nor does a difference in damages arising from a disparity in injuries among the plaintiff class preclude typicality. See Trautz v. Weisman, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994). Further, Defendants' attack on the merits of Plaintiffs' claims is misplaced at this stage because these are unrelated to the Rule 23 requirements. See In re IPO Sec. Litig., 471 F.3d at 41.

I find that the Plaintiffs have satisfied the typicality and commonality requirements of Rule 23.

**Adequacy of Representation**

Rule 23(a)(4) requires that the representative parties "will fairly and adequately protect the interests of the class." Denney v. Deutsche Bank AG, 443 F.3d 253, 267 (2d Cir. 2006). The "adequacy" inquiry is meant to identify any conflicts of interest between the named plaintiffs and the remainder of the class they seek to represent. Amchem Products v. Windsor, 521 U.S. 591, 625 (1997). Pursuant to Rule 23(g), Plaintiffs also must demonstrate that "class counsel is

qualified, experienced, and generally able to conduct the litigation."[6] Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 87 (S.D.N.Y. 2001); Fed. R. Civ. P. 23(g).

Plaintiffs contend that there is no conflict of interest between the named Plaintiffs and other members of the putative class because their claims are essentially identical to those of the rest of the class. (Pl. Mem. at 15-16.) Defendants respond that the Plaintiffs have not vigorously pursued the class claims and that several of the named Plaintiffs cannot adequately represent the class because of numerous substantive contradictions among their original affidavits, amended affidavits, and depositions.[7] (Sec. Opp. Mem. at 16-17.)

While I agree with Defendants that the affidavits and depositions are unfortunately vague and at times contain some contradictions, I do not agree that the contradictions implicate the Plaintiffs' moral character or that the Plaintiffs are inadequate as class representatives. Defendants specifically highlight Mary Gamboa's ("Gamboa") affidavits and deposition and argue that her testimony is self-contradictory with respect to the hours that she purportedly worked over the course of her employment at Delgado. (Sec. Opp. Mem. at 17.) However, many of the named Plaintiffs, including Gamboa, have worked at various Delgado Travel locations over extended periods of time. (See Eikenberry Aff., Ex. EE.) Gamboa worked at Delgado from 1987 through November 2006. Id. Although neither party has provided this Court with complete deposition transcripts, it appears that one reason for the differences in Gamboa's reported hours is that at times she refers to her job at one location versus another. (Pl. Sec. Reply Mem. at 3-4, Ex. GGG at 65-89.) Similarly, the contradictions in Greis Vidal's testimony can be explained by the differences in the hours she worked at the company's main office as opposed to the branch offices. (Pl. Sec. Reply Mem. at 4, Ex. HHH at 30-31.) The adequacy requirement is

---

[6] As noted in the Advisory Committee's Notes to the 2003 Amendments for Fed.R.Civ.P. 23(g), the adequacy of class counsel is now considered under Fed.R.Civ.P. 23(g) rather than as part of the adequacy requirement of Fed.R.Civ.P. 23(a)(4).

[7] Defendants also argue that the named Plaintiffs are inadequate as class representatives because Defendants discharged two of the Plaintiffs for theft. (Sec. Opp. Mem. at 17.) For reasons beyond the scope of this opinion, one of the Plaintiffs accused of malfeasance is no longer a named Plaintiff in this matter, but she continues to be a plaintiff in a related matter. With respect to Zulay Scamaronez ("Scamaronez"), the single named Plaintiff who was discharged for theft, Plaintiffs dispute Defendants allegations. (Pl. Rep. Mem. at 5.) However, Plaintiffs have not provided any support for their challenge to the theft allegations other than the testimony of Scamaronez. (Pl. Rep. Aff., Ex. DDD at 124.) Scamaronez never filed a report with the local police and this Court has not received any record that she filed a complaint with the Department of Labor. (Id.) While it is unclear whether Defendants' allegations are true, this Court is concerned that Scamaronez's alleged theft will present an undue distraction if the class claims should proceed to trial. Accordingly, Plaintiffs' class will be certified but Scamaronez will not be a named Plaintiff as she cannot fairly and adequately protect the interests of the class.

fulfilled here because the named Plaintiffs possess the same interests and allege the same injuries as the putative class members.

Defendants' contention that Plaintiffs' counsel is not competent to undertake this litigation is without merit. (Opp. Mem. at 18.) Plaintiffs' counsel clearly meets the requirements of Fed. R. Civ. P. 23(g), which requires the court to consider: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Plaintiffs' counsel, Michael A. Faillace, Esq. and Peter G. Eikenberry, Esq., affirm that they are familiar with the FLSA and New York labor law, and have litigated or are currently litigating a number of cases on behalf of plaintiffs under these laws. (Faillace Aff. ¶ 3; Eikenberry Aff. ¶¶ 28, 38-40.) Further, Mr. Eikenberry specializes in complex employment and commercial litigation. (Eikenberry Aff. ¶ 28.) Mr. Faillace also states that his firm has the financial resources to represent the class. ( Id. ¶ 4.) Accordingly, the court finds that plaintiff's counsel is qualified, experienced and generally able to conduct the litigation.

I find that the Plaintiffs and their counsel have sufficiently demonstrated that they are adequate class representatives.

**Predominance**

The predominance requirement of Rule 23(b)(3) is a more demanding version of the commonality requirement of Rule 23(a). Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 523-24 (1997). The predominance inquiry "should particularly focus on the liability issue . . . and if the liability issue is common to the class, common questions predominate over individual ones." Bolanos v. Norwegian Cruise Lines Ltd, 212 F.R.D. 144, 148 (S.D.N.Y. 2002) (internal quotation omitted). To satisfy predominance, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001) (citation omitted).

Here, Plaintiffs satisfy the predominance requirement because the question of whether Defendants breached their legal duties under the New York Labor Law is at the heart of the liability determination and predominates over the issues—namely damages—that are subject only to individualized proof.

Courts "have repeatedly stated that differences in the amount and recoverability of damages do not defeat predominance." Collins, 248 F.R.D. at 105. Therefore, it is irrelevant that Plaintiffs will need to present individual evidence to demonstrate their work schedules, meal periods, compensation, and sick time. (Sec. Opp. Mem. at 18.) These individual differences do not predominate over the central issues of liability and do not preclude central issues from being subject to generalized proof. Visa Check/MasterMoney, 280 F.3d at 136. If necessary, the Court can appoint a magistrate judge or special master to preside over individual damages proceedings or alternatively, decertify the class after the liability trial and instruct class members on how to prove damages individually. See Collins, 248 F.R.D. at 105. Further, if a jury determines that Defendants' record keeping is inadequate, Plaintiffs may be able to measure damages based on a representative sample and damages would be far less individualized. See Reich v. South New England Telecomm. Corp., 121 F.3d 58, 66-68 (2d Cir 1997); see generally Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

**Superiority of Class Treatment**

Finally, Plaintiffs must show that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The Court should consider, *inter alia*, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 339 (S.D.N.Y. 2004). Further, a class action is superior where class-wide litigation of common issues will reduce litigation costs and promote greater judicial efficiency. Collins, 248 F.R.D. at 105-06.

Plaintiffs argue that class treatment is the superior method of adjudication because (1) there are relatively small amounts of money involved, and for most class members individual litigation costs will likely exceed any gains from overtime recovery, (2) individual plaintiffs lack the financial resources to litigate individually, (3) class members may fear reprisal and would not be inclined to pursue individual claims because the class includes current employees of Defendants. (Pl. Mem. at 18-19.)

Defendants respond that class action is not superior to individual litigation because the case would require the court to conduct "trials within trials" to determine whether each plaintiff received the correct overtime pay. (Sec. Opp. Mem. at 18.) However, in this case, the

predominant common issues to be determined pertain to Defendants' alleged policies and practices that affected all class members. It would be a waste of judicial resources if each plaintiff was forced to litigate these issues in separate actions. See Collins, 248 F.R.D. at 106. The case will also be manageable as a class action because the entire alleged course of action by Defendants took place in New York and all class members will be proceed under the same federal and state laws. (See Compl. ¶ 2.)

### C. Court-Supervised Notice to Claimants

The only remaining question for the Court is Plaintiffs' proposed form of notice. The parties have stipulated to a proposed notice except for inclusion of a warning to employees about retaliation (Proposed Notice of Pendency of FLSA Collective Action and Class Action ¶ 12). The Court will authorize the proposed notice subject to further correspondence that will include recommended revisions. The proposed notice will be in English and Spanish. In addition, the Court requests that the Plaintiffs submit a final list of putative class members to whom the notice will be sent upon final authorization.

### III. CONCLUSION

For the reasons discussed, Plaintiffs' motion to proceed as an FLSA collective action is GRANTED. Plaintiffs' have also met all of the requirements under Federal Rule 23 and their motion for class certification is hereby GRANTED with the exception that Zulay Scamaronez will be excluded as a named Plaintiff. Within 10 days of the date of this Opinion & Order, Plaintiffs are directed to submit a final list of putative class members to whom notice will be sent accompanied by a proposed final notice. The Final Notice will be sent to the putative class members within 10 days of its approval by this Court. The Clerk of the Court is instructed to close this motion.

SO ORDERED
New York, New York
August _, 2008

U.S.D.J.